

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00102-CR
_____

JEREMY DANIEL WEHRING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law #1
Gregg County, Texas
Trial Court No. 2007-5043

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Jeremy Daniel Wehring was charged with the misdemeanor offense of driving while intoxicated (DWI). Alleging that the initial traffic stop for failure to use a turn signal in a right-turn-only lane was illegal, Wehring filed a motion to suppress the evidence related to the DWI charge. A hearing resulted in the denial of the motion to suppress, and this appeal ensued. The sole question on appeal is whether Section 545.104 of the Texas Transportation Code requires a driver to continuously signal his or her intent to turn for no less than the last 100 feet before the turn, even when pulling into a turn-only lane. Because we decide the plain reading of Section 545.104 requires a driver to use a turn signal in such a circumstance, we find the traffic stop was proper and affirm the judgment of the trial court.

## I. Factual Background

Sergeant Benjamin Thomas Kemper was patrolling southbound on McCann Road when he observed a black truck driven by Wehring exceeding the speed limit. Because he did not have a radar unit that could register the vehicle's speed, Kemper continued to follow the truck until he observed Wehring stop at an intersection in a right-turn-only lane and make the right turn without using a traffic signal. Believing that Wehring's failure to signal intent to turn "continuously for not less than the last 100 feet" was a violation of Section 545.104 of the Texas Transportation Code, Kemper initiated a traffic stop that resulted in a DWI arrest. *See* TEX. TRANSP. CODE ANN. § 545.104 (Vernon 1999).

2

Arguing that the traffic stop violated his "rights as guaranteed him under both the federal and state constitutions and under state statutes," Wehring filed a motion to suppress all evidence related to the DWI offense. Based on the plain reading of Section 545.104 of the Texas Transportation Code, which requires a driver to "indicate an intention to turn" by signaling "continuously for not less than the last 100 feet of movement of the vehicle before the turn," and noting no exception in the statute for drivers entering a turn-only lane, the trial court concluded the traffic stop was proper and denied the motion to suppress.

## II. Standard of Review

A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd). We will review de novo the legal question involving interpretation of the Texas Transportation Code. *Hernandez v. State*, 957 S.W.2d 851 (Tex. Crim. App. 1998); *Maysonet*, 91 S.W.3d at 369. Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold it on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Maysonet*, 91 S.W.3d at 369.

### III.    Analysis

A routine traffic stop closely resembles an investigative detention.  *Berkemer v. McCarty*, 468 U.S. 420 (1984).  Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable.  U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  To determine the reasonableness of an investigative detention, we apply the guidelines set out by the United States Supreme Court in *Terry v. Ohio*:  (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference.  392 U.S. 1, 19–20 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first guideline, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242–43.  Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred.  *Id.* at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)).  To determine whether an officer was reasonable in his or her initial action, we ask whether, in light of the officer's experience and knowledge, there existed specific, articulable facts which, taken together with rational inferences from those facts, reasonably warranted an intrusion.  *Id.* at 242.  "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop."  *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd).

4

Here, Kemper believed Wehring's failure to signal intent to turn "continuously for not less than the last 100 feet" was a violation of Section 545.104 of the Texas Transportation Code. The parties have asked us to interpret the statute to determine whether it was reasonable for Kemper to conclude that a traffic violation had been committed, even though Wehring's failure to signal occurred in a turn-only lane.

When interpreting statutes, we seek to effectuate the intent or purpose of the legislators who enacted them. *Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278, 282 (Tex. App.—Texarkana 2008, pet. filed) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)). If the statute is clear and unambiguous, the plain meaning of the words should be applied. *Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *Johnson*, 246 S.W.3d at 282. However, if application of the plain language would lead to absurd consequences the Legislature could not have intended, we may look to extra-contextual factors to arrive at a sensible interpretation of the statute. *Hines*, 75 S.W.3d at 447; *Boykin*, 818 S.W.2d at 785–86.

Section 545.104 of the Texas Transportation Code provides in part:

> (a)     An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.

> (b)     An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

The plain language of the statute requires the driver to signal for a turn. It does not include exceptions for those situations in which there is only one direction to turn. We cannot say that requiring the use of a turn signal while entering a turn-only lane and making the turn would lead to absurd results. *See Williams v. State*, No. 05-02-00314-CR, 2002 WL 31521373, at *2 (Tex. App.—Dallas Nov. 14, 2002, no pet.) (holding Section 545.105 requires driver use turn signal in turn-only lane). It has been held that Section 545.104 provides a "bright-line rule by which drivers of motor vehicle and police officers charged with enforcing the laws may operate. If a turn is made from one street onto another, a signal is required." *Id.* (citing *King v. State*, 86 S.W.3d 764, 2002 WL 1981399, at *3 (Tex. App.—El Paso 2002, no pet.)) (Section 545.104 applies anytime turn made and not limited to situations in which driver turns at intersections or turning around near curve or grade.).[1]

Nevertheless, Wehring contends that the Texas Court of Criminal Appeals previously decided that a turn signal was not required in a right-turn-only lane in *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006). In that case, officers testified that they waited 3.2 miles to pull Dixon over after they first observed him make a right turn from a right-turn-only lane without a signal. *Id.* at 588. Consent to search the vehicle was given, and officers found methamphetamine on Dixon's

---

[1]There is no contention that this turn was anything other than a full ninety-degree turn; therefore, we will not address the conflict of opinion on whether exit-lane turns from a freeway require a signal. *Compare Trahan v. State*, 16 S.W.3d 146 (Tex. App.—Beaumont 2000, no pet.) (no turn or lane change necessary to exit freeway; thus statute does not apply) *with Reha v. State*, 99 S.W.3d 373, 375–76 (Tex. App.—Corpus Christi 2003, no pet.) (any turn, no matter the degree, requires use of turn signal under statute).

passenger. *Id.* The trial court granted Dixon's motion to suppress based on a finding that the officers did not make the traffic stop within a reasonable distance after the alleged violation and that the turns made were lawful. *Id.* at 598–90. "It is clear from the hearing that the trial judge simply did not believe that the driver in this case committed a traffic offense by making a turn from a designated turn lane without using a signal." *Id.* at 590. The trial judge stated,

> Even though they may be testifying they stopped him for a traffic offense, the court's not bound by that. . . . It seems to me that the traffic stop, if the facts you recite are correct and he made two turns from dedicated turn lanes on the light, I would not think that there was any valid traffic stop.

*Id.* at 590–91. The Texas Court of Criminal Appeals decided that it was within the trial court's discretion to decide whether the court believed the officers' claim that they pulled Dixon over for a traffic offense. *Id.* at 591. According to the Texas Court of Criminal Appeals,

> It is also clear that the trial court did not believe the officers' allegations that they pulled Appellee over because he committed a traffic offense. The fact that they waited for over three miles after the alleged violation to stop Appellee diminishes the credibility of their claim that they stopped him for an unlawful turn . . . the trial judge was in effect saying, "If you really thought the driver had committed a traffic offense, then why did you wait so long before pulling him over?"

*Id.*

We, along with our sister courts of appeals, disagree that the holding in *Dixon* was to disregard the plain meaning of Section 545.104, and to interpret that that section does not require a turn signal. *Turner v. State*, 261 S.W.3d 129, 131 (Tex. App.—San Antonio 2008, no pet.). First, the Texas Court of Criminal Appeals deferred to the trial court's finding. Thus, statutory

7

interpretation, which is an issue of law, was not being decided by the Texas Court of Criminal Appeals because deference to a trial court's decision is not required on legal matters. Second, the record puts into question whether the trial court even believed testimony that a turn signal was not used. In other words, the trial court was entitled to determine that Dixon used a turn signal and that officers did not "really [think] the driver had committed a traffic offense." *Dixon*, 206 S.W.3d at 590.

In sum, in failing to signal his intent to turn when entering the turn lane, and when actually making the right turn, Wehring committed a traffic violation.[2] When a traffic offense is committed in the presence of a peace officer, the detention is reasonable. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Kemper was, therefore, authorized to detain Wehring. Thus, the evidence related to the DWI, gathered after the lawful traffic stop, was not required to be suppressed.[3]

**IV.    Conclusion**

Because we find Wehring committed a traffic violation by failing to indicate his intent to turn in a turn-only lane, we agree with the trial court that the traffic stop was valid. The trial court's

---

[2]The record reflects that the arrows for the turn lane were located only fifty feet from the intersection. Presumably then, Wehring was required to indicate his intent to turn fifty feet before the arrows indicating the street lane was a turn-only lane.

[3]We also note the record references that Wehring was speeding. Kemper could have also initiated the traffic stop on this basis despite the absence of his radar gun. *See Talamantez v. State*, No. 04-04-00622-CR, 2006 Tex. App. LEXIS 1383, at *1 (Tex. App.—San Antonio Feb. 22, 2006, no pet.) (mem. op., not designated for publication).

decision to deny the motion to suppress based on the argument that the traffic stop was illegal is affirmed.

                                                  Jack Carter

                                                  Justice

Date Submitted:     December 30, 2008
Date Decided:       December 31, 2008

Publish