**AFFIRMED; Opinion Filed February 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01388-CR

### MARCUS LEE HOLMQUIST, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law
Rockwall County, Texas
Trial Court Cause No. CR13-0496**

## OPINION

Before Justices Fillmore and Thomas, Retired[1]
Opinion by Justice Fillmore

After the trial court denied Marcus Lee Holmquist's motion to suppress evidence, he pleaded guilty to misdemeanor driving while intoxicated (DWI). The trial court sentenced him to ninety days' confinement and a $400 fine, suspended the sentence, and placed him on twelve months' community supervision. In two issues, Holmquist contends the trial court erred by denying his motion to suppress because a traffic-violation stop was not effected within a reasonable time and distance, and a traffic light controlling a turn-only lane superseded the statutory requirement of section 545.104 of the transportation code. We affirm the trial court's judgment.

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment. Justice Michael O'Neill was a member of the original panel and participated in the submission of this case; due to his retirement, he did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1(b).

**Background**

Holmquist was charged with misdemeanor DWI. Prior to trial, Holmquist filed a motion to suppress contending his detention, arrest, seizure, and custody occurred without reasonable suspicion. Holmquist sought suppression of evidence obtained incident to and as a result of the allegedly unlawful arrest, custody, and seizure, including a breath test result, field sobriety test results, a video recording, and opinions of the arresting officer.

At the suppression hearing, Rockwall Police Department patrol officer Benton Brumit testified that at approximately 12:26 a.m. on March 13, 2013, he observed the vehicle driven by Holmquist in a left turn-only lane of an intersection without an activated turn signal. Brumit testified, and the video recording made by the camera in Brumit's patrol vehicle showed, that when the traffic light changed to green, Holmquist's vehicle and the vehicle in front of Holmsquist's vehicle made left-hand turns at the intersection without signals indicating the drivers' intention to turn left. Brumit testified turning left without signaling the intention to turn was a traffic violation for which he could write a traffic violation citation. Brumit turned left at the intersection and followed the vehicles, intending to stop both drivers for the traffic violation of failing to signal a left-hand turn.

Brumit noted the vehicles were traveling at approximately thirty miles per hour in a forty-five-miles-per-hour speed zone. Brumit testified the vehicles were not impeding traffic, and driving below the maximum speed limit did not constitute a traffic violation. However, in addition to the observed traffic violation of failing to signal a left turn, other factors such as the time of night, the proximity to establishments at which alcoholic beverages were served, and the vehicles traveling below the speed limit caused Brumit to believe the two drivers might be intoxicated.

In the interest of officer safety, Brumit prefers not to make simultaneous traffic stops of multiple vehicles by himself. Therefore, he radioed for another patrol unit to proceed to his location to assist him. When Brumit observed the arrival of the cover patrol unit driven by Officer Norlin, Brumit activated the emergency lights on his vehicle and stopped Holmquist's vehicle while relying on Norlin to stop the other vehicle. Brumit testified it was 1.6 miles from Holmquist's left turn to the point where Brumit activated the emergency lights on his patrol vehicle.

The trial court entered the following findings of fact:[2]

1. At 12:21:42 a.m. Rockwall Police Officer Benton Brumit's . . . patrol vehicle was positioned in the parking lot where a local restaurant named Pizza Getti is located and it serves alcoholic beverages.

2. At approximately 12:22:16 a.m. on March 13, 2013, [Brumit] was in a marked patrol car facing east while directly behind [Holmquist], and observed [Holmquist's] vehicle stationary in the left-hand turn only lane and begin his left-hand turn in the left-hand turn only lane northbound, from the south service road of Interstate 30 onto Ridge Road in Rockwall, Texas.

3. Defendant(s) only legal movement for their vehicle(s) is to make a left hand turn.

4. When the traffic light changed from red to green, [Holmquist]'s vehicle and the vehicle immediately ahead of it continued through the green light and made a left-hand turn from the left turn-only lane onto Ridge Road from the south service road of Interstate 30 without activating their left hand turn signals.

5. [Brumit] testified making a left-hand turn from the left hand turn-only lane without activating [Holmquist]'s left-hand turn signal is a Class "C" Traffic Code violation.

6. The traffic violation that [Holmquist]'s vehicle was stopped for was "fail to signal turn."

7. [Holmquist] drove 30 miles per hour in a 45 mile per hour speed zone from the south service road to Interstate 30 on Ridge Road for a distance

_____

[2] The trial court's references to record citations in its findings of fact are not included here.

of approximately 1.6 miles before [Brumit] activated his emergency overhead lights to stop [Holmquist]'s vehicle.

8.   At 12:23:47 a.m. [Brumit] call[ed] for a backup unit to pull over the lead vehicle while he pulls over [Holmquist]'s vehicle.

9.   [Brumit] continued to follow [Holmquist] while waiting for his cover officer to arrive before activating his emergency overhead lights to stop [Holmquist]'s vehicle.

10.   At 12:25:22 a.m. [Brumit] illuminated his emergency lights to stop [Holmquist]'s vehicle.

11.   There was no further traffic violation after the illegal left hand turn made by [Holmquist].

12.   The lead vehicle was stopped by a second Rockwall Police Officer, Officer Norlin on the same basis that [Holmquist] was stopped—"fail to signal turn."

13.   At the time of the detention, neither [Brumit] nor [Norlin] had a warrant to detain or seize either vehicle.

14.   [Brumit] identified [Holmquist] in open court.

The trial court concluded as a matter of law that a person making a left-hand turn from a left-hand turn only lane without signaling the turn violates section 545.104 of the transportation code. Based upon Holmquist's violation of section 545.104, the trial court concluded Brumit's detention of Holmquist was justified by reasonable suspicion.

The trial court denied Holmquist's motion to suppress. Holmquist filed this appeal.

**Motion to Suppress**

In two issues, Holmquist asserts the arresting officer had no reasonable suspicion to stop him because "at the time the officer observed the traffic violation, the detaining officer had allowed the violation to go stale, therefore, the stop was not effected within a reasonable time and distance" and because the left-turn only traffic control device at the intersection superseded the requirement in section 545.104(b) of the transportation code that he signal his intention to turn left.

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). This same highly deferential standard applies regardless of whether the trial court granted or denied a motion to suppress evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes specific findings of fact, we determine whether the evidence supports those findings. *Id.* As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150.

*Reasonable Suspicion*

A routine traffic stop is similar to an investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 436–39 (1984). An investigative detention is a seizure. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd). Therefore, a traffic stop must be reasonable

–5–

under the United States and Texas Constitutions. *Id.*; *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.

To determine the reasonableness of an investigative detention, we must determine (1) whether the police officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). After an initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention. *Powell*, 5 S.W.3d at 377 (citing *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979)). Where the initial detention is based on a traffic violation, various combinations of factors will support a reasonable suspicion of criminal activity sufficient to justify a continued detention or further questioning unrelated to the traffic violation. *Id.*

Holmquist attacks the reasonableness of the investigative detention, that is whether Brumit had a reasonable suspicion to justify an investigative detention. *See Davis*, 947 S.W.2d at 242–43. Specifically, a police officer must have a reasonable suspicion that some activity out of the ordinary is occurring and some indication the unusual activity is related to crime. *Id.* at 244; *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). In making a reasonable suspicion determination, we disregard the subjective intent or motive of the officer making the stop and consider solely, under the

totality of the circumstances, whether there was an objective basis for the stop. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

An officer may lawfully stop and reasonably detain a person for a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *see also Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (decision to stop an automobile generally reasonable where officer has probable cause to believe traffic violation has occurred). Section 545.104 of the transportation code, titled "Signaling Turns; Use of Turn Signals," provides:

> (a) An operator shall use the signal authorized by Section 545.106[3] to indicate an intention to turn, change lanes, or start from a parked position.
> (b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

TEX. TRANSP. CODE ANN. § 545.104(a) & (b) (West 2011). The record includes Brumit's testimony at the hearing on the motion to suppress that Holmquist and the driver of the vehicle in front of him failed to signal their left-hand turns. The video introduced in evidence at the hearing shows that neither Holmquist nor the driver of the vehicle in front of him signaled an intention to turn left when approaching the intersection, while sitting stationary at the intersection awaiting the traffic light's indication to turn, or while making the left-hand turn. The trial court found that neither Holmquist nor the driver of the vehicle in front of him activated their left-hand turn signals, and Brumit testified that making the left-hand turn without signaling was a traffic code violation. The trial court found the traffic violation for which Holmquist was stopped was failing to signal his turn.

The trial court concluded as a matter of law that a person making a left-hand turn from a turn only lane without signaling the vehicle's turn violates section 545.104 of the transportation

---

[3] Section 545.106 of the transportation code, titled "Signals by Hand and Arm or by Signal Lamp," provides that, except in instances not applicable here, an operator of a motor vehicle required to give a stop or turn signal shall do so by using the hand and arm or lighting signal lamps approved by the Texas Department of Public Safety. TEX. TRANSP. CODE ANN. § 545.106(a) (West 2011).

code. Based upon Holmquist's violation of section 545.104, the trial court further concluded Brumit's detention of Holmquist was justified by reasonable suspicion.

<u>Failure to Signal Intent to Turn</u>

Holmquist does not dispute that he did not signal his intention to turn left. He acknowledges he was within 100 feet of the intersection, where he was "awaiting" the traffic light's "instruction" on when to turn left. However, in his second issue, Holmquist contends the left turn-only traffic control device at the intersection superseded the requirement in section 545.104(b) that he signal his intent to turn left.

The trial court concluded as a matter of law that a person making a turn from a turn-only lane without signaling the turn violates section 545.104 of the transportation code. We agree.

The beginning point in statutory construction analysis is the statute's plain language. *Ex Parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). If a statute is clear and unambiguous, we apply the plain meaning of its words. *Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002). Only if the statute's plain language leads to absurd results or the language is ambiguous may a reviewing court consider extra-textual factors. *Whiteside*, 12 S.W.3d at 821.

Section 545.104(b) clearly and unambiguously requires a vehicle operator intending to turn right or left to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." *See* TEX. TRANSP. CODE ANN. § 545.104(b). The plain language of section 545.104(b) requires the driver to signal for a turn; it does not include exceptions for those situations in which there is only one direction to turn. *See Wehring v. State*, 276 S.W.3d 666, 668, 670 (Tex. App.—Texarkana 2008, no pet.) (section 545.104(b) requires driver to signal his

intent to turn, even from a turn-only lane).[4] "We cannot say that requiring the use of a turn signal while entering a turn-only lane and making the turn would lead to absurd results." *Id*.[5]

The court of criminal appeals did not determine in *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006), "that a turn signal is unnecessary when turning from a dedicated turn lane. Rather, the issue before the court was whether it was within the trial judge's discretion to decide whether to believe the arresting officer's assertion that he initiated the traffic stop for a traffic offense.'" *Mahaffey v. State*, 316 S.W.3d 633, n.32 (Tex. Crim. App. 2010) (quoting *Diaz v. State*, No. 03-08-00523-CR, 2009 WL 2195427, at *2, (Tex. App.—Austin July 23, 2009, no pet.) (mem. op.) (not designated for publication)). "Under the plain language of the Transportation Code, all movements right or left on the roadway must be made safely, but only some—*turns*, lane changes, or starts from a parked position—require a signal." *Id*. at 643 (emphasis added).

We conclude the language of section 545.104 of the transportation code is not ambiguous,[6] and the clear language of that statute required Holmquist to signal his intention to make a left-hand turn. The fact that Holmquist was in a turn-only lane did not provide an

---

[4] *See State v. Kidd*, No. 03-09-00620-CR, 2010 WL 5463893, at *2, *3 (Tex. App.—Austin Dec. 30, 2010, no pet.) (mem. op.) (not designated for publication) (defendant failed to continuously signal his intent to turn for not less than 100 feet before the turn and deputy was authorized to enforce the law and detain defendant for that traffic violation; evidence related to DWI seized after the lawful traffic stop was legally gathered and trial court erred in granting motion to suppress); *State v. Elias*, No. 08-08-00085-CR, 2012 WL 4392245, at *6–7 (Tex. App.—El Paso Sept. 26, 2012, pet. ref'd) (not designated for publication) (evidence supported reasonable inference defendant violated section 545.104(b) of the transportation code by failing to continuously signal his intention to turn for the last 100 feet of movement of the vehicle before the turn, initial detention supported by reasonable suspicion defendant committed traffic violation, and trial court erred by granting motion to suppress).

[5] *See Williams v. State*, No. 05-02-00314-CR, 2002 WL 31521373, at *2 (Tex. App.—Dallas Nov. 14, 2002, pet. ref'd) (not designated for publication) ("The plain language of [section 545.104] requires the driver to signal for a turn." Applying the plain language of section 545.104 does not lead to an absurd result. Section 545.104 "provides a clear, bright-line rule by which drivers of motor vehicle[s] and police officers charged with enforcing the laws may operate. If a turn is made from one street onto another, a signal is required."); *Kidd*, 2010 WL 5463893, at *2 (section 545.104(b) clearly and unambiguously requires driver intending to turn to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn," and does not lead to absurd results; applying language of section 545.104(b) provides reliable bright-line rule for drivers of motor vehicles and police officers charged with enforcing the law; *see also Diaz v. State*, No. 03-08-00523-CR, 2009 WL 2195427, at *2–3 (Tex. App.—Austin July 23, 2009, no pet.) (mem. op.) (not designated for publication) (under section 545.104(b), driver's failure to signal when turning from designated turn lane was traffic violation).

[6] Holmquist's counsel acknowledged at oral submission that even if section 545.104(b) of the transportation code is ambiguous, and even assuming no violation of section 545.104(b) had occurred, a traffic stop based on a mistaken understanding of the law can be reasonable under *Heien v. North Carolina*, 135 S. Ct. 530, 539, 540 (2014) (even assuming no violation of state law had occurred, police officer's mistaken understanding of the law was reasonable, and thus traffic stop was valid).

exception to the mandatory language of the statute. We resolve Holmquist's second issue against him.

## State Traffic Violation

In his first issue, Holmquist maintains the traffic stop was illegal under *Dixon*, because of an unreasonable amount of time and extended distance between the traffic offense and the traffic stop. In *Dixon*, the court of criminal appeals upheld the trial court's grant of a motion to suppress the fruits of a traffic stop that was based on a failure to signal a turn from a designated turn lane. The court of criminal appeals noted the trial court's findings of fact indicated the stop and search were generally unreasonable for reasons other than the unnecessary delay between turns made without signaling the intention to turn and the traffic stop, including that the turns were legal, the length of the detention and extent of the search conducted were excessive, and information on which the police based surveillance was not from a reliable source. *Dixon*, 206 S.W.3d at 590. The court also stated it was "clear that the trial court did not believe the officers' allegations that they pulled Appellee over because he committed a traffic offense," and the court of appeals "properly determined that it was within the discretion of the trial judge to decide whether to believe the officers' claim that they pulled Appellee over for a traffic offense." *Id*. at 591[7]

In *Dixon*, the court of appeals stated that in assessing whether a delay in time or distance between a traffic violation and a traffic stop is unreasonable, the court should properly consider all of the factors surrounding the stop. *Dixon v. State*, 151 S.W.3d 271, 275 (Tex. App.—Texarkana 2004), *aff'd*, 206 S.W.3d 587.[8] Here, Brumit attributed the delay in making the traffic

---

[7] *See also Carey v. State*, No. 05-08-01300-CR, 2010 WL 610924, at *2 (Tex. App.—Dallas Feb. 23, 2010, no pet.) (not designated for publication) (appellant misplaced his reliance on *Dixon*; "*Dixon* did not turn on the officer's delay between 'the amount of time or the distance between the traffic offense and the traffic stop.' Rather, the trial court did not believe that Dixon committed a traffic offense.") (citation omitted).

[8] *See also Powell v. State*, No. 03-10-00728-CR, 2011 WL 4357756, at *5 (Tex. App.—Austin Sept. 14, 2011, no pet.) (mem. op.) (not designated for publication).

–10–

stop to the fact that he intended to stop Holmquist's vehicle and the vehicle in front of Holmquist for failing to signal an intention to make a left-hand turn. Brumit testified that, in the interest of officer safety, he prefers not to make simultaneous traffic stops of multiple vehicles by himself. Brumit radioed for another patrol officer to provide back up and to make the traffic stop of the vehicle in front of Holmquist, and when the cover patrol unit arrived, Brumit made the traffic stop of Holmquist's vehicle.

The trial court concluded Holmquist committed a traffic violation, and detention of Holmquist after that traffic violation was justified by reasonable suspicion. In so concluding, the trial court implicitly found a delay of 1.6 miles in stopping Holmquist after Brumit's observation of the traffic violation was not unreasonable. The record, as summarized above, and the trial court's explicit findings, support an implied finding that there was a reasonable justification for Brumit's delay in effecting the traffic stop. In contrast to the trial judge's disbelief of the officer's testimony in *Dixon*, the trial court here believed Brumit, as demonstrated by its denial of the motion to suppress.

After reviewing the record, the evidence, when viewed objectively, supports the arresting officer's reasonable suspicion determination. Under the totality of the circumstances, we conclude the arresting officer articulated specific facts and circumstances which, taken together with rational inferences from those facts and circumstances, constituted reasonable suspicion that Holmquist had committed a traffic violation by failing to continuously signal his intention to turn for the last 100 feet of movement before he turned left, thus justifying the stop. *See* TEX. TRANSP. CODE ANN. § 545.104(b); *see also Garcia*, 827 S.W.2d at 944 (officer may lawfully stop and reasonably detain person for traffic violation).[9]

---

[9] *See also Kortemier v. Tex. Dep't of Pub. Safety*, No. 05-08-01182-CV, 2009 WL 1959256, at *2 (Tex. App.—Dallas July 9, 2009, no pet.) (mem. op.) (not designated for publication).

–11–

We conclude the trial court did not err by denying Holmquist's motion to suppress.  We resolve Holmquist's first issue against him.

### Conclusion

Having resolved Holmquist's issues against him, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
131388F.U05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARCUS LEE HOLMQUIST, Appellant

No. 05-13-01388-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law, Rockwall County, Texas,
Trial Court Cause No. CR13-0496.
Opinion delivered by Justice Fillmore,
Justice Thomas, Retired, participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of February, 2015.