COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-16-00087-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | County Criminal Court at Law #2 |
| JORGE ARTURO ESPINOZA, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20150C10006) |
| | § | |

## **O P I N I O N**

The State of Texas, Appellant, charged Jorge Arturo Espinoza, Appellee, by information with one count of driving while intoxicated (DWI) on October 27, 2015. Espinoza filed a motion to suppress his detention by law enforcement for lack of probable cause, in addition to a separate motion to suppress the blood test. The trial court granted Espinoza's motion to suppress his detention. In four issues, the State now appeals the trial court's order. We reverse.

### **FACTUAL SUMMARY**

During the early morning hours of September 13, 2015, Officer Willem Wilkinson, then assigned to the DWI Task Force of the El Paso Police Department, was on patrol on Mesa Street in El Paso, Texas. Also present in the vehicle was an assistant district attorney who was present

in the patrol vehicle as part of a ride-along in fulfillment of her official duties. The following events were recorded on Officer Wilkinson's vehicle's on-board video recorder.

At approximately 2 a.m., Officer Wilkinson observed a vehicle make a U-turn from the northbound lanes into the southbound lanes of Mesa Street in El Paso, Texas, entering the middle lane of that street. As the vehicle executed a U-turn, it entered the right lane of travel and then moved back into the middle lane without signaling. Officer Wilkinson began to follow the vehicle. The vehicle continued to travel in the center of the middle lane for approximately forty-five seconds. During this time, the on-board video shows the vehicle's right tires touched the right-hand lines of the center lane four separate times, however, the tires did not cross over the lane markers. At 2:10:59 a.m., the vehicle's right tires crossed completely over the right-hand lines of the center lane without any turn signals, and then the vehicle drifted back over into the center lane.

Some few seconds later, Officer Wilkinson activated his emergency lights and initiated a traffic stop of the vehicle. Once Officer Wilkinson activated his emergency lights, the on-board video shows the vehicle immediately swerving to the left and then pulling over to the right. The vehicle stopped in a parking lot. Officer Wilkinson then initiated contact with the driver, Espinoza.

Officer Wilkinson noted that Espinoza's face was flushed, and he had a blank stare. Officer Wilkinson asked Espinoza where he was going, Espinoza responded he was going home from a bar. Officer Wilkinson detected an odor of alcohol emanating from Espinoza's person. Espinoza admitted drinking that night. Officer Wilkinson asked Espinoza to perform standardized field sobriety tests (SFSTs), to which Espinoza agreed. Officer Wilkinson

2

determined, after Espinoza's performance on the SFSTs, the signs he observed while speaking to Espinoza, and the odor of alcohol emanating from Espinoza's person, he believed Espinoza to be intoxicated and he arrested Espinoza for DWI.

At the suppression hearing, Officer Wilkinson testified he observed two separate traffic violations: first, a failure on Espinoza's part to signal when his vehicle came out of the U-turn and drifted from the middle lane to the right lane, and then back into the middle lane; and second, when Espinoza's vehicle's right-hand tires crossed over the line just before Officer Wilkinson initiated the traffic stop. He further testified that a traffic violation occurs when a driver fails to remain within a single lane of traffic, regardless of whether the action was safe or unsafe.

The State also asked Officer Wilkinson whether a vehicle that drifts from lane to lane is a sign that the driver is intoxicated. He testified that in his experience, a vehicle that drifts from lane to lane is a "cue . . . that—over the years, it's not normal behavior for someone to kind of straddle the lane and come back. Especially the time of day, the area, it's a cue, yes." When asked what he meant by "the area," Officer Wilkinson replied that there were many establishments in the area where Espinoza was driving that served alcohol until 2 a.m., and that it was a well-known area for people to go consume alcoholic beverages. When asked what constitutes a traffic offense, Officer Wilkinson testified that "straddling" occurs when a vehicle drives on the lane markers that divide street lanes. Even so, Officer Wilkinson admitted that in the time between the U-turn and the point when he activated his vehicle's emergency lights, Espinoza's vehicle did not "straddle" the lane lines in a way that met the definition of straddling he was trained on, and thus Espinoza did not commit a traffic violation during that time. He also stated that Espinoza's initial straddling was not unsafe, and agreed with defense counsel's definition of straddling as that

3

occurring when a vehicle's tires pass over the lane lines.

After the suppression hearing, the trial court granted Espinoza's motion to suppress the traffic stop. In its findings of fact and conclusions of law, the trial court recognized that Officer Wilkinson had observed Espinoza's vehicle drift from lane to lane twice and fail to signal a lane change, but the trial judge was not convinced that Espinoza's vehicle's tires actually crossed over the line markers on the street, and that because the traffic in the area was light, Espinoza's actions were not unsafe. Thus, the trial court concluded that no violation of TEX.TRANSP.CODE ANN. § 545.060 occurred, that Officer Wilkinson did not have reasonable suspicion to stop Espinoza, and that the stop was therefore unlawful. The trial court did not make a specific finding or conclusion regarding the trustworthiness of Officer Wilkinson's testimony.

## DISCUSSION

In its four issues, the State contends that the trial court abused its discretion when it granted Espinoza's motion to suppress. It argues that: (1) the trial court erred in finding that Officer Wilkinson did not have reasonable suspicion to stop Espinoza where it focused on his subjective intent instead of applying the objective standard; (2) that the trial court abused its discretion in failing to find that an officer in Officer Wilkinson's position would have been justified in stopping Espinoza for violating TEX.TRANSP.CODE ANN. § 545.060; (3) that the trial court abused its discretion when it did not find that Officer Wilkinson had sufficient reasonable suspicion to stop Espinoza for violating TEX.TRANSP.CODE ANN. § 545.104 when indisputable on-board video evidence supported Officer Wilkinson's testimony; and (4) that the trial court abused its discretion by failing to find that Officer Wilkinson had reasonable suspicion to suspect that Espinoza was committing DWI.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010). That discretion is tested under a bifurcated standard of review as articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). Under that bifurcated standard, we give almost total deference to the trial court's resolution of questions of historical fact, especially when those determinations are based on assessments of credibility and demeanor. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex.Crim.App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex.Crim.App. 2011). Likewise, we give the same deference to trial court rulings that apply the law to the facts if those determinations turn on credibility or demeanor. *Arguellez*, 409 S.W.3d at 662. We review *de novo* mixed questions of law and fact that do not turn on credibility and demeanor. *Id.*

However, mixed questions of law and fact, that do not turn on the evaluation of credibility and demeanor, are reviewed *de novo*. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex.Crim.App. 2013). Further, we conduct a *de novo* review as to pure questions of law. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex.Crim.App. 2011). When the trial court makes explicit fact-findings, as the case here, we determine whether the evidence, when viewed in the light most favorable to the ruling, supports them. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006). Regardless of whether the motion was granted or denied, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. García-Cantú*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008). An

5

appellate court may uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

In cases involving videotape evidence, we apply the deferential standard articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997), "to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Tucker v. State*, 369 S.W.3d 179, 184-85 (Tex.Crim.App. 2012) (*quoting Montanez v. State*, 195 S.W.3d 101, 109 (Tex.Crim.App. 2006)). Thus, a court of appeals should view the video in the light most favorable to the trial court's ruling, but if the video evidence does not support the trial court's conclusion, then the court of appeals should reverse. *Id*. An appellate court should review *de novo* a trial court's application of the law of search and seizure. *Id*.

If the relevant facts of the case are uncontested and there are no witness credibility disputes—as is the scenario here—we apply the *de novo* standard of review. *See State v. Gendron*, No. 08-13-00119-CR, 2015 WL 632215, at *6 (Tex.App.--El Paso Feb. 11, 2015, pet ref'd)(not designated for publication)(*citing State v. Alderete*, 314 S.W.3d 469, 472 (Tex.App.--El Paso 2010, pet. ref'd)(rejecting a *de novo* standard of review where the trial court found the testifying officer to lack credibility); *see also State v. Vasquez*, No. 08-13-00079-CR, 2015 WL 1316494, at *3–4 (Tex.App.--El Paso Mar. 18, 2015, pet. ref'd)(not designated for publication)(applying abuse of discretion standard when the trial court found the arresting officer's testimony to lack credibility). We also "may review de novo 'indisputable video evidence' contained in a videotape;" however, we "must defer to the trial judge's factual finding on whether

6

a witness actually saw what was depicted on a videotape." *State v. Duran*, 396 S.W.3d 563, 570-71 (Tex.Crim.App. 2013).

*The Stop*

Espinoza contends the traffic stop was conducted without reasonable suspicion of criminal wrongdoing in violation of his Fourth Amendment rights. He asserts the traffic stop was illegal because the on-board video did not demonstrate a traffic violation as alleged by Officer Wilkinson—which the Supreme Court concluded in *Terry v. Ohio* violates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). A "reasonable-suspicion determination is made by considering the totality of the circumstances." *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex.Crim.App. 2005).

Reasonable suspicion exists when a "police officer has 'specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.'" *Furr v. State*, 499 S.W.3d 872, 878 (Tex.Crim.App. 2016)(quoting *Wade v. State*, 422 S.W.3d 661, 668 (Tex.Crim.App. 2013)). A reasonable suspicion determination is an objective standard, and an "objectively justifiable basis for the detention" must be established. *Wade*, 422 S.W.3d at 668. The standard also requires a reviewing court to assess the totality of the circumstances to determine whether the officer had an objective suspicion of criminal activity. *Id.* To find that reasonable suspicion exists, the "legality of a traffic stop based on reasonable suspicion does not depend upon a showing that an actual offense was committed; it is sufficient to show that the officer reasonably

believed that an offense was in progress." *State v. Torrez*, 490 S.W.3d 279, 283 (Tex.App.--Fort Worth 2016, pet. ref'd).

In *Wehring v. State*, the court held that reasonable suspicion to initiate a traffic stop exists when an officer reasonably believes that a traffic violation has occurred. *Wehring v. State*, 276 S.W.3d 666, 671 (Tex.App.--Texarkana 2008, no pet.). There, an officer observed the defendant driving over the speed limit. *Id.*, at 668. Since the officer did not have a radar unit that could register the vehicle's speed, he continued to follow the vehicle and observed the defendant make a right turn without signaling. *Id.* The officer conducted a traffic stop because the defendant's failure to signal intent to turn was a violation of Section 545.104 of the Texas Transportation Code. *Id.* The traffic stop resulted in a DWI arrest and the defendant filed a motion to suppress. *Id.* The court concluded the traffic stop was proper because the officer believed the defendant's failure to signal was a traffic violation, and "[i]f an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Id.*, at 669, (quoting *Zervos v. State*, 15 S.W.3d 146, 151 (Tex.App.--Texarkana 2000, pet. ref'd)). The court held the denial of the motion to suppress the evidence relating to the DWI was proper because it was gathered after the lawful traffic stop. *Id.*, at 671. An officer may conduct a traffic stop if he reasonably believes that the driver is committing DWI. *See Alderete*, 314 S.W.3d at 473 (*citing Curtis v. State*, 238 S.W.3d 376, 379 (Tex.Crim.App. 2007). Relevant evidence in determining whether there was reasonable suspicion to stop a driver for DWI include: whether the stop was made late at night; weaving by the driver; and the training and experience of the officer in DWI investigations. *See Alderete*, 314 S.W.3d at 473; *Curtis*, 238 S.W.3d at 379–80. A reviewing court should consider the lateness of the hour when the arrest was made and the arresting officer's

8

experience specifically in detecting intoxicated drivers, as well as "rational inferences" from the facts articulated by the officer. *Curtis*, 238 S.W.3d at 381.

The facts of this case are similar to *Alderete*. There, the driver was stopped on suspicion that she was driving while intoxicated because she was swerving within her lane of travel at approximately 3 a.m., but not because of any suspected traffic violation. *Alderete*, 314 S.W.3d at 471. Both arresting officers testified that they had received training in investigating driving-while-intoxicated offenses, and that in their training and experience, some of the common characteristics exhibited by intoxicated drivers included driving late at night and swerving within or outside a driver's lane of traffic. *Id*. The trial court granted the driver's motion to suppress, and in its entered findings of fact and conclusions of law stated that the officers' testimonies were credible, but that the driver's swerving within the lane was not a traffic code violation and that the officers lacked authority to initiate the stop. *Id*. This Court reversed the trial ruling because the trial court committed error in only considering whether the officers had reasonable suspicion to stop the driver based on a traffic violation, however, we determined that the officers had reasonable suspicion to stop the driver based on DWI. *Id*., at 474 –75.

Here, at the time of Espinoza's arrest, Officer Wilkinson testified that he had been a peace officer with the El Paso Police Department for nine and a half years and was assigned to the DWI Task Force. He also testified that he was SFST certified, had taken numerous courses on intoxicated drivers, and had attended numerous training sessions related to those topics. Thus, his testimony established that he had ample training and experience in detecting intoxicated drivers, similar to the officers in *Alderete*, and that in his experience, a driver drifting from lane to lane late at night is, in and of itself, a sign of intoxication. Officer Wilkinson also testified that

9

he stopped Espinoza an area known to contain many drinking establishments at approximately 2 a.m., the time when many bars are closing. We are compelled to consider these latter facts, and it would be error for us to consider only the fact that Espinoza was weaving within his own lane. *See Curtis*, 238 S.W.3d at 379–81. While Officer Wilkinson did not articulate DWI as the reason he conducted the stop, the prosecutor urged the trial court to find the stop was legal basis for a DWI temporary detention. As the trial court did not address DWI as a basis for the stop in its entered findings, it should be treated as having been implicitly rejected by the trial court. *See Alderete*, 314 S.W.3d at 473.

Although Officer Wilkinson did not testify that he stopped Espinoza for suspicion of DWI, if there was a correct basis for the stop of which the officer knew or could have known (i.e., DWI), the mere fact that the officer subjectively believed the stop was justified for another reason will not render the stop illegal. *See Gendron*, 2015 WL 632215, at *6 (*citing Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Duran*, 396 S.W.3d at 570. Likewise, the trial court did not enter specific findings regarding Officer Wilkinson's testimony, and we, therefore, find his credibility is not in dispute.

When viewing the totality of the circumstances and considering the arresting officer's training and experience in conducting DWI investigations, we find that, based on rational inferences from the on-board video and his testimony, Officer Wilkinson could have formed reasonable suspicion to stop Espinoza on suspicion of driving while intoxicated when he observed Espinoza weaving within his own lane and cross over the lane marker at one point, and when the stop was made in an area with many drinking establishments nearby at approximately 2 a.m., the time when many of those establishments were closing. *See Alderete*, 314 S.W.3d at 474 (finding

10

that officers were justified in stopping a driver on suspicion of DWI when the driver was weaving within her own lane late at night); *see also Navarette v. California*, 572 U.S. 393, 401-02, 134 S.Ct. 1683, 1690-91, 188 L.Ed.2d 680 (2014)(recognizing "weaving back and forth" as an indicator of drunk driving [internal citation omitted]); *Murrell v. State*, No. 01-15-00200-CR, 2016 WL 2841201, at 2, 5-6 (Tex.App.--Houston [1st Dist.] May 12, 2016, pet. ref'd)(mem. op., not designated for publication)(considering the lateness of the hour and the proximity of bars as weighing in favor of the existence of reasonable suspicion to stop a suspected intoxicated driver).

It is important to reiterate in this finding that proof of the actual commission of the offense is not the perquisite for a finding of reasonable suspicion to conduct a traffic stop, but only specific and articulable facts that lead to a reasonable suspicion that an offense has been committed. *Drago v. State*, 553 S.W.2d 375, 377 (Tex.Crim.App. 1977). Likewise, it is not a requirement that a traffic violation must be committed to allow an officer to stop a vehicle, and a stop based on suspicion that a driver is intoxicated is legal. *Alderete*, 314 S.W.3d at 473 (*citing Curtis*, 238 S.W.3d at 379; *James v. State*, 102 S.W.3d 162, 172 (Tex.App.--Fort Worth 2003, pet. ref'd)). Thus, the State did not need to prove that Espinoza was driving while intoxicated at the time the stop was made, but only present facts supporting a reasonable suspicion that he may be driving while intoxicated. The State did so during the suppression hearing when it showed that Officer Wilkinson observed Espinoza was weaving within his own lane, late at night, and in an area with many bars nearby.

The trial court committed error when it did not consider in its conclusions of law whether Officer Wilkinson had reasonable suspicion to stop Espinoza for DWI, but instead only considered whether he had committed a traffic offense. *See Alderete,* 314 S.W.3d at 474 (holding that the

11

trial court committed error when it failed to consider whether reasonable suspicion to stop a driver for DWI existed, and when it only considered whether reasonable suspicion to stop the driver for traffic violations existed). Thus, we find that the trial court abused its discretion by granting Espinoza's motion to suppress, and because Officer Wilkinson had reasonable suspicion to stop Espinoza, we sustain the State's fourth issue. We, therefore, do not reach the State's Issues One, Two, and Three.

## CONCLUSION

We sustain the State's fourth issue, reverse the trial court's order granting Espinoza's motion to suppress, and remand the case to the trial court.


November 30, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.
Palafox, J. Dissenting

(Do Not Publish)